UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARJORIE A. FLOWER,

                          Plaintiff,

v.                                                          6:16-CV-1084
                                                            (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                          Defendant.
_____

APPEARANCES:                                    OF COUNSEL:

MARJORIE A. FLOWER
  Plaintiff, appearing *Pro Se*
586 Youngs Corners Road
Amsterdam, NY 12010

U.S. SOCIAL SECURITY ADMIN.                     JOHANNY SANTANA, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this Social Security action filed by Marjorie A. Flower

("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner")

pursuant to 42 U.S.C. § 405(g), is Defendant's motion for judgment on the pleadings.  (Dkt. No.

19.)  For the reasons set forth below, Defendant's motion for judgment on the pleadings is

granted, the Commissioner's decision denying Plaintiff's disability benefits is affirmed, and

Plaintiff's Complaint is dismissed.

I.      **RELEVANT BACKGROUND**

A.      **Factual Background**

Plaintiff was born in 1965, making her 45 years old at the alleged onset date and 47 years old at the date last insured.  Plaintiff reported completing the 12th grade as well as training to be a hairdresser in 1984.  Plaintiff has past work as an office manager and office worker.  Generally, Plaintiff alleges disability due to fibromyalgia, Graves' disease, and chronic fatigue syndrome ("CFS").

B.      **Procedural History**

Plaintiff applied for Disability Insurance Benefits on January 8, 2013, alleging disability beginning April 1, 2011.  Plaintiff's application was initially denied on April 18, 2013, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  Plaintiff appeared at a hearing before ALJ Michelle S. Marcus on August 14, 2014.  On January 28, 2015, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 6.)[1]  On July 6, 2016, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1.)

C.      **The ALJ's Decision**

Generally, in her decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 11-27.)  First, the ALJ found Plaintiff was insured for benefits under Title II until September 30, 2013.[2]  (T. 11.)  Second, the ALJ found that Plaintiff did not engage

---

[1]      The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

[2]      The Court notes that, elsewhere in the record, Plaintiff's date last insured is noted as March 31, 2013.  (T.65, 74, 183.)

2

in substantial gainful activity during the period from her alleged onset date of April 1, 2011, through her date last insured of September 30, 2013. (T. 11-12.) Third, the ALJ found that Plaintiff's fibromyalgia, migraine headaches, and mild degenerative disc disease ("DDD") of the lumbar and cervical spine were severe impairments, while Graves' disease, asthma, dysthymic disorder, anxiety disorder, and history of alcohol abuse were not severe impairments and allegations of CFS and sleep apnea or other sleep impairment were not medically determinable impairments. (T. 12-21.) Fourth, the ALJ found that, through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings"). (T. 17-18.) Specifically, the ALJ considered Listings 1.04 (disorders of the spine), 3.03 (asthma), 12.04 (affective disorders), and 12.06 (anxiety disorders). (T. 18.) The ALJ also indicated that she considered the evidence as a whole as required under Social Security Ruling ("SSR") 12-2p and SSR 14-1p, in light of Plaintiff's allegations of fibromyalgia and CFS. (*Id.*) Fifth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) except during an eight hour work day, is able to stand for three hours, walk for four hours and sit for eight hours. She can lift/carry twenty pounds occasionally and ten pounds frequently. There can be no work at unprotected heights or involving ladders or scaffolds.

(*Id.*) Sixth, and last, the ALJ found that, through the date last insured, Plaintiff was capable of performing her past relevant work as a secretary for a construction company. (T. 26.) The ALJ consequently found that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from April 1, 2011, the alleged onset date, through September 30, 2013, the date last insured. (T. 27.)

3

### D.     The Parties' Briefings on Their Cross-Motions

Plaintiff, appearing *pro se* in this action, did not file a memorandum in support of a motion for judgment on the pleadings as required by General Order 18.  On March 24, 2017, Plaintiff's deadline to file her brief was *sua sponte* extended by Magistrate Judge Daniel J. Stewart until May 8, 2017.  (Dkt. No. 11.)  On May 1, 2017, Plaintiff requested an extension of time in which to file her brief and Magistrate Judge Stewart granted that extension until June 5, 2017.  (Dkt. Nos. 12, 13.)  On July 18, 2017, due to Plaintiff's failure to file a brief by the deadline, Magistrate Judge Stewart ordered that Defendant was to file her brief first with Plaintiff having the opportunity to respond to Defendant's brief and assert any other issues to be considered.  (Dkt. No. 14.)  Defendant filed her brief on November 1, 2017.  (Dkt. No. 19.)  This case was subsequently reassigned to the undersigned.  (Dkt. No. 20.)  To date, Plaintiff has not filed a brief.  The Court is entitled to consider the record without the benefit of any arguments she might have put forth.  General Order 18, at 7.

Generally, Defendant makes three arguments in support of her motion for judgment on the pleadings.  First, Defendant argues that the record was fully developed.  (Dkt. No. 19, at 12-13 [Def.'s Mem. of Law].)  In support, Defendant notes that the ALJ requested medical records from all of the providers Plaintiff listed in her disability application paperwork, and received all treatment records available in addition to exercising her discretion to order consultative examinations.  (*Id*. at 13.)

Second, Defendant argues that the ALJ's Step Two determination is supported by substantial evidence.  (*Id*. at 13-15.)  Specifically, Defendant summarizes the ALJ's findings regarding the severe and non-severe physical impairments.  (*Id*. at 13-14.)  Regarding the ALJ's finding that Plaintiff's dysthymic disorder, anxiety disorder, and history of alcohol abuse do not

4

cause more than minimal function limitations, Defendant notes that the ALJ applied the Psychiatric Review Technique and rated Plaintiff in the four areas of functioning, finding that Plaintiff had only mild limitations in her activities of daily living, social functioning, and concentration, persistence, or pace, and that Plaintiff had not experienced any episodes of decompensation. (*Id*. at 14-15.) Defendant notes that the ALJ also found CFS and sleep apnea to be non-severe impairments because Plaintiff failed to seek recommended treatment to diagnose these conditions. (*Id*. at 15.) Regarding CFS, Defendant argues that, even if this Court were to find that the ALJ erred in finding this impairment non-severe, the error is harmless because the ALJ considered Plaintiff's complaints of fatigue beyond Step Two. (*Id*. at 15.) Defendant also argues that the ALJ considered Plaintiff's complaints of chronic pain and fatigue associated with fibromyalgia because the ALJ found that impairment severe. (*Id*.)

Third, Defendant argues that the ALJ's RFC finding is supported by substantial evidence. (*Id*. at 15-19.) Specifically, Defendant argues that the ALJ considered and weighed the opinions of Charles Plotz[3], M.D., and Lynn Hickey, M.D., giving significant weight to Dr. Plotz's opinion, and little weight to most of Dr. Hickey's opinion because it was based on Plaintiff's subjective complaints. (*Id*. at 16-17.) Defendant notes that the ALJ provided more restrictive limitations in the RFC than those opined by Dr. Plotz because he credited some of Plaintiff's subjectively reported limitations. (*Id*. at 17.) Defendant also argues that the ALJ provided a sufficient explanation for not giving Dr. Hickey's opinion more weight and properly looked to Plaintiff's activities of daily living, determining that they showed a higher level of functioning than that alleged. (*Id*. at 16.) Defendant also notes that Plaintiff declined or failed to pursue

---

[3]     Throughout her decision, the ALJ refers to Dr. Plotz as "Dr. Poltz." (T. 25-26.) For clarity, the Court refers to the medical expert only as "Dr. Plotz" as his printed name appears at T. 385.

other treatments and therapies recommended consistently by her doctors. (*Id*. at 17.) Defendant also argues that the ALJ was justified in giving Dr. Plotz's opinion significant weight. (*Id*.) Defendant additionally argues that the ALJ considered the rest of totality of the objective medical evidence and non-medical evidence to make an adverse credibility finding. (*Id*. at 17-19.)

## II.    RELEVANT LEGAL STANDARD

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo* review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's

> severe impairment, he has the residual functional capacity to
> perform his past work.  Finally, if the claimant is unable to perform
> his past work, the [Commissioner] then determines whether there is
> other work which the claimant could perform.  Under the cases
> previously discussed, the claimant bears the burden of the proof as
> to the first four steps, while the [Commissioner] must prove the final
> one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin,* 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson,* 540 U.S. 20, 24 (2003).

## III.    ANALYSIS

### A.    Whether the ALJ Fully Developed the Record

After careful consideration, the Court answers this question in the affirmative for the

reasons stated in Defendant's memorandum of law.  (Dkt. No. 19, at 12-13 [Def.'s Mem. of

Law].)  To those reasons, the Court adds the following analysis.

Although the claimant has the general burden of proving that he or she has a disability

within the meaning of the Social Security Act, "'the ALJ generally has an affirmative obligation

to develop the administrative record'" due to the non-adversarial nature of a hearing on disability

benefits.  *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (quoting *Melville v. Apfel*, 198

F.3d 45, 52 (2d Cir. 1999); citing *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002), *Butts*

*v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004), *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir.

2000)).  "'It is the ALJ's duty to investigate and develop the facts and develop the arguments

both for and against the granting of benefits.'" *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.

2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009)).

An "ALJ must make every reasonable effort to help [the claimant] obtain medical reports

from the claimant's medical sources so long as permission is granted to request such reports."

*Hart v. Comm'r*, 07-CV-1270, 2010 WL 2817479, at \*5 (N.D.N.Y. July 16, 2010) (quoting 20 C.F.R. § 404.1512(d) (internal quotation marks omitted)). "An ALJ is not required to seek additional information absent 'obvious gaps' in the administrative record that preclude an informed decision." *Zurek v. Colvin*, 15-CV-0453, 2016 WL 4466791, at \*7 (N.D.N.Y. Aug. 24, 2016) (quoting *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999); citing *Hart*, 2010 WL 2817479, at \*5). "[A]dditional evidence or clarification is sought when there is a conflict or ambiguity that must be resolved, when the medical reports lack necessary information, or when the reports are not based on medically acceptable clinical and laboratory diagnostic techniques." *Zurek*, 2016 WL 4466791, at \*7 (citing 20 C.F.R. §§ 404.1520b(c)(1)-(4), 416.920b(c)(1)-(4); *Rosa*, 168 F.3d at 80; *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998)).

At the time of the August 14, 2014, administrative hearing in this case, Plaintiff was represented by attorney James Duffy. (T. 33, 35-36.) At the hearing, Exhibits 1F through 12F were submitted into the record with no objections from Mr. Duffy. (T. 35-36.) Prior to closing the hearing, the ALJ indicated to Mr. Duffy that she needed treatment records from Stephen Sipperly, M.D., at Capital Care, Andrea Carrasco, M.D., and Donald Wexler, M.D., as well as any other rheumatology records. (T. 50, 61-62, 63.) Exhibits 14F (office treatment records from Dr. Sipperly), 15F (indicating no records from Dr. Wexler were available), and 16F (indicating no records from Dr. Carrasco were available) were subsequently entered into the record. (T. 369-70, 371, 372.)

Additionally, the ALJ subsequently sent interrogatories to Charles Plotz, M.D., and received Dr. Plotz's responses into evidence at Exhibit 18F. (T. 382-91.) The ALJ provided this evidence to Mr. Duffy as proposed additional evidence and Mr. Duffy responded with the argument that considerable weight should be afforded to the opinion of Plaintiff's treating

physician Dr. Hickey as opposed to the opinion of medical expert Dr. Plotz. (T. 263-67.) In her decision, the ALJ considered the opinions of Drs. Hickey and Plotz as well as the opinions of non-examining medical consultant T. Bruni and consultative examiners Kautilya Puri, M.D., and Neil Berger, Ph.D. (T. 13, 15-16, 24-26, 69, 78, 310-14, 315-17, 367-68, 382-91.) The ALJ also considered treatment records at Exhibits 1F, 2F, 7F through 12F, 14F, and 17F. (T. 12-16, 20-26, 268-304, 326-66, 369-70, 373-81.)

Because the ALJ sought to supplement the record with additional treatment records and Dr. Plotz's opinion, the Court finds that she fulfilled her affirmative obligation to develop the administrative record. Therefore, remand is not required on this basis.

**B.      Whether the ALJ Appropriately Assessed Plaintiff's Chronic Fatigue Syndrome and Sleep Apnea**

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 19, at 13-15 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

In order to be found disabled, a claimant must show that he is unable to perform any substantial gainful activity by reason of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505(a). Consequently, only impairments that are "medically determinable impairments" can be considered in the disability analysis. In order to qualify as a medically determinable impairment, an impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical or laboratory diagnostic techniques." 20 C.F.R. § 404.1521; 20 C.F.R. § 404.1529. An impairment must be established by medical evidence such as signs, symptoms, and laboratory findings, and not only by a claimant's statements. *Id*.

10

At Step Two of the sequential evaluation process, the ALJ found that Plaintiff's allegations of CFS and sleep apnea or other sleep impairment were not medically determinable impairments.  (T. 13.)  The ALJ noted that, although Plaintiff told William Malone, M.D., that she suffered from chronic fatigue with daytime somnolence, Dr. Malone concluded that her complaints were out of proportion to her thyroid function test results.  (T. 12, 358, 360.)  The ALJ noted that Dr. Malone nevertheless referred Plaintiff for a sleep study, which was also recommended by pain management provider Aruna Sahoo, M.D.  (T. 12, 327, 358.)  As the ALJ noted, Plaintiff acknowledged at the hearing that she did not undergo a sleep study and testified that she told Dr. Malone that she does not have sleep apnea.  (T. 12, 60.)  Plaintiff also testified that she has pain at night and that the pain interrupts her sleep.  (T. 60.)

For the above reasons, the Court finds that the ALJ's conclusion that Plaintiff's CFS and sleep apnea were not medically determinable impairments is supported by substantial evidence, or is at most harmless error because, even if Plaintiff had medically determinable impairments of CFS and sleep apnea, the ALJ considered Plaintiff's allegations of chronic fatigue and pain in association with fibromyalgia at subsequent steps in light of her finding that Plaintiff's fibromyalgia was severe.  (T. 12-26.)  Therefore, remand is not required on this basis.

### C.     Whether the ALJ Appropriately Assessed Plaintiff's Mental Impairments, Asthma, and Graves' Disease

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law.  (Dkt. No. 19, at 13-15 [Def.'s Mem. of Law].)  To those reasons, the Court adds the following analysis.

At Step Two, the ALJ must determine whether the claimant has a severe impairment that significantly limits her physical or mental abilities to do basic work activities.  20 C.F.R. § 404.1520(c).  Basic work activities include walking, standing, sitting, lifting, carrying, pushing,

pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying

out simple instructions, using judgment, and responding appropriately to supervision, co-workers

and usual work situations.  *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (citing

*Gibbs v. Astrue*, 07-CV-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. §

404.1521(b)(1)-(5)).  "Although the Second Circuit has held that this step is limited to 'screening

out *de minimis* claims,' [] the 'mere presence of a disease or impairment, or establishing that a

person has been diagnosed or treated for a disease or impairment' is not, by itself, sufficient to

render a condition severe." *Taylor*, 32 F. Supp. 3d at 265 (quoting *Dixon v. Shalala*, 54 F.3d

1019, 1030 (2d Cir. 1995); *Colvin v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).  Overall, the

claimant retains the burden of presenting evidence to establish severity.  *Id*. (citing *Miller v.

Comm'r of Soc. Sec.*, 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008)).

     This Court has also indicated that the failure to find a specific impairment severe at Step

Two is harmless where the ALJ concludes there is at least one other severe impairment, the ALJ

continues with the sequential evaluation, and the ALJ provides explanation showing she

adequately considered the evidence related to the impairment that is ultimately found non-severe.

*Fuimo v. Colvin*, 948 F. Supp. 2d 260, 269-70 (N.D.N.Y. 2013) (citing *Dillingham v. Astrue*, 09-

CV-0236, 2010 WL 3909630 (N.D.N.Y. Aug. 24, 2010), Report and Recommendation adopted

by 2010 WL 3893906 (N.D.N.Y. Sept. 30, 2010)); *see also Reices-Colon v. Astrue*, 523 F. App'x

796, 798 (2d Cir. 2013) (finding that any error in failing to find plaintiff's anxiety and panic

disorder severe at Step Two would be harmless because the ALJ found other severe impairments

present, continued through the sequential evaluation process, and specifically considered

plaintiff's anxiety and panic attacks at those subsequent steps).

### i.     Plaintiff's Mental Impairments

At Step Two, the ALJ found that Plaintiff's dysthymic disorder, anxiety disorder, and history of alcohol abuse were not severe impairments. (T. 13-17.) When considering Plaintiff's mental impairments, the ALJ found that Plaintiff had mild limitations in activities of daily living, social functioning, and concentration, persistence, and pace, and no episodes of decompensation. (T. 16-17.) The ALJ afforded significant weight to Dr. Bruni's opinion in determining that Plaintiff did not have a severe mental impairment during the relevant period. (T. 16.) The ALJ also afforded significant weight to the portion of consultative examiner Dr. Berger's opinion indicating that Plaintiff was able to perform complex tasks with supervision and assistance and would experience no more than mild difficulty maintaining a regular schedule because she found that this portion was supported by the evidence of record including "generally unremarkable clinical examination findings, effective use of psychotropic medications, lack of mental health counseling and . . . the claimant's wide range of daily activities that involved sustaining attention and concentration and interacting with others." (T. 15.) The ALJ afforded no weight to the portion of Dr. Berger's opinion indicating that Plaintiff had some moderate limitations for dealing with stress, which Dr. Berger stated were mostly because of Plaintiff's fatigue and some of the memory issues she reported. (T. 15.)

The ALJ provided several reasons for rejecting this portion of Dr. Berger's opinion, pointing to the following: (1) the lack of a longitudinal treating relationship between Dr. Berger and Plaintiff; (2) Dr. Berger's own clinical observations of no more than "small issues" with memory, intact concentration and attention skills, and average cognitive skills; (3) the unremarkable clinical findings recorded by other examiners; (4) the conclusion of Dr. Malone that Plaintiff's complaints of fatigue were out of proportion to the objective clinical findings; (5)

the inconsistency of Dr. Berger's conclusion with the opinion of non-examining consultant Dr. Bruni; and (6) Dr. Berger's reliance on Plaintiff's subjectively reported complaints.  (T. 15-16.)

Substantial evidence supports the ALJ's conclusion that the medical treatment did not support a severe mental impairment.  The record indicates Plaintiff has previously been assessed with depressive disorder and anxiety, but has not sought specialized mental health care.  (T. 272, 327, 352-56, 377-79.)  On March 29, 2013, consultative examiner Dr. Berger observed that Plaintiff was cooperative with an adequate manner of relating, appropriate dress, good hygiene, normal posture, normal motor behavior with some lethargy or lack of energy, appropriate eye contact, fluent speech with a slight lisp, coherent and goal directed thoughts, dysphoric affect, dysthymic mood, intact attention and concentration, "more or less intact" memory with some small issues, and average intellectual functioning.  (T. 310-12.)  Dr. Berger diagnosed dysthymic disorder, anxiety disorder, and alcohol abuse by history.  (T. 313.)  He opined that Plaintiff can follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration, learn new tasks, perform complex tasks with some supervision and assistance, make appropriate decisions and relate adequately with others.  (T. 313.)  He opined that she has some mild limitations in her ability to maintain a regular schedule and moderate limitations in her ability to deal with stress mostly because of her fatigue and some of the memory issues that she reported.  (*Id.*)

On June 4, 2014, Plaintiff reported having depression and anxiety with "some little panic attacks," but she was noted on examination to appear well, in no acute distress, with normal speech, thought processes, orientation, memory, attention, language, fund of knowledge, and appropriate mood and affect as well as intact judgment.  (T. 352-53.)  On July 7, 2014, Plaintiff reported she still had feelings of depression and anxiety despite taking Lexapro prescribed by Dr.

Hickey; she was started on Zoloft.  (T. 355-56.)  On July 31, 2014, Plaintiff presented for an

orthopedic consultation and reported Zoloft was now producing a rash.  (T. 365.)  At that

examination, she was noted as well-appearing, alert, and oriented.  (T. 365.)  At the hearing in

August 2014, she reported taking Xanax for anxiety and depression.  (T. 58.)

      The evidence of record does not indicate that the ALJ erred in finding that Plaintiff's

mental impairments were not severe.  The ALJ's detailed analysis of these impairments relies on

the opinions of both non-examining and examining consultants to support her finding that

Plaintiff's medically determinable mental impairments did not cause more than minimal

limitation in her ability to perform basic mental work activities.  (T. 15-17.)

### ii.      Plaintiff's Asthma and Graves' Disease

      The ALJ also found that Plaintiff's asthma and Graves' disease were not severe

impairments.  (T. 12-13.)  When considering Plaintiff's Graves' disease, the ALJ noted that

Plaintiff was responding well to medication management and tolerating medication without

experiencing typical medication side effects.  (T. 12.)  The ALJ noted that Dr. Malone reported

Plaintiff had no evidence of Graves' eye disease based on the results of clinical examinations.

(T. 12, 357, 360.)  The ALJ also noted that Plaintiff's thyroid levels were maintained secondary

to medication management and biopsied thyroid nodules were benign.  (T. 12, 363-64.)  Indeed,

endocrinology treatment records from Dr. Malone in February, May, and August 2013 indicate

that Graves' disease was responding well to methimazole in February, May, and August 2013.

(T. 358-63.)  In August 2013, Dr. Malone indicated methimazole would be continued for 18-24

for months in an effort to induce clinical remission.  (T. 363.)

      In considering Plaintiff's asthma, the ALJ noted that this condition appears to occur

intermittently and that Plaintiff was seen once during the relevant period by a primary care

provider who assessed asthma as an active problem. (T. 13, 369.) The ALJ correctly noted a prescription for Combivent Respimat following that appointment, clear lung sounds on subsequent clinical examinations, and a lack of ongoing medication management or other treatment of respiratory complaints. (T. 13, 300, 303, 305-06, 327, 329, 331, 339, 342, 347, 350, 353, 369, 374, 378). The ALJ also accurately noted that Plaintiff did not list asthma on her disability forms or mention it at the consultative examination with Dr. Puri or at the hearing. (T. 13, 55, 65, 305-06.)

Substantial evidence supports the ALJ's finding that Plaintiff's asthma and Graves' disease were not severe. Plaintiff's treatment history does not illustrate that her asthma or Graves' disease resulted in more than minimal functional limitations.

For the reasons above, the Court finds that the ALJ's findings regarding Plaintiff's mental impairments, asthma, and Graves' disease are supported by substantial evidence. Therefore, remand is not required on this basis.

### D.    Whether the ALJ's RFC Is Supported by Substantial Evidence

After careful consideration, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 19, at 15-19 [Def. Mem. of Law].) To those reasons, this Court adds the following analysis.

RFC is defined as "'what an individual can still do despite his or her limitations . . . Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)). "In making a residual functional capacity determination, the ALJ must consider a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which

could interfere with work activities on a regular and continuing basis." *Pardee*, 631 F. Supp. 2d at 210 (citing 20 C.F.R. § 404.1545(a)). "Ultimately, '[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment.'" *Hendrickson v. Astrue*, 11-CV-0927, 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11, 2012) (quoting SSR 85-15, 1985 WL 56857, at *8).

"An ALJ should consider 'all medical opinions received regarding the claimant.'" *Reider v. Colvin*, 15-CV-6517, 2016 WL 5334436, at *5 (W.D.N.Y. Sept. 23, 2016) (quoting *Spielberg v. Barnhart*, 367 F.Supp.2d 276, 281 (E.D.N.Y. 2005)). "The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion or for any competent medical opinion." *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (citing *Burgess*, 537 F.3d at 131). In assessing a plaintiff's RFC, an ALJ is entitled to rely on opinions from both examining and non-examining State agency medical consultants because these consultants are qualified experts in the field of social security disability. 20 C.F.R. §§ 404.1513a; *see also Frey ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) (summary order) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record."); *Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.") (internal quotation marks omitted). The RFC determination "must be set forth with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The Second Circuit has long recognized the 'treating physician rule' set out in 20 C.F.R. § 404.1527(c). "'[T]he opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 128). However, there are situations where the treating physician's opinion is not entitled to controlling weight, in which case the ALJ must "explicitly consider, *inter alia*: (1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, 15-CV-1196, 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017), *Report and Recommendation adopted by* 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017)) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)). After considering these factors, "the ALJ must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129). "The failure to provide 'good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand.'" *Id.* (quoting *Burgess*, 537 F.3d at 129-30). The factors for considering opinions from non-treating medical sources are the same as those for assessing opinions from treating sources, with the consideration of whether the source examined the claimant or not replacing the consideration of the treatment relationship between the source and the claimant. 20 C.F.R. § 404.1527(c)(1)-(6).

Here, the ALJ found that Plaintiff could perform a modified range of light work. (T. 18.) In determining Plaintiff's physical RFC, the ALJ summarized Plaintiff's medical treatment and considered Plaintiff's testimony and subjective complaints. (T. 18-26.) The ALJ also summarized, considered, and weighed the opinions of Drs. Hickey and Plotz. (T. 24-26.)

The ALJ afforded some weight to Dr. Hickey's opined limitation that Plaintiff should avoid working on ladders or unprotected heights given Plaintiff's treatment history for headaches, but found that the record as a whole did not support the other limitations in her opinion, which the ALJ afforded little weight. (T. 24-25, 367-68.) The ALJ noted the following:

> The evidence does not establish that Dr. Hickey had access to reports from treating clinicians, which show generally unremarkable physical examination findings, unremarkable imaging study results, normal blood test results, apparent doctor shopping and opioid overuse, repeated recommendations for physical therapy and increased activity, wide range of daily activities requiring physically and mentally demanding activities, and the claimant's failure to undergo a non-invasive sleep study or comply with oft repeated recommendations that the claimant undergo a consultative examination by a rheumatologist. All of these factors significantly undermine the credibility of the claimant's statements regarding her symptoms and limitations and detract from the persuasiveness of Dr. Hickey's opinions.

(*Id.*)

Conversely, the ALJ afforded "significant, but not great, weight" to Dr. Plotz's opinion. (T. 25, 382-91.) Dr. Plotz opined that Plaintiff was capable of light work. (T. 385.) More specifically, he opined that she could do the following: frequently lift and carry up to 10 pounds and occasionally lift and carry up to 20 pounds; sit for six hours at a time for a total of eight hours, stand for four hours at a time for a total of six hours, and walk for four hours at a time for a total of six hours; frequently use the bilateral upper extremities for reaching, handling, fingering, feeling, and pushing/pulling; frequently use the bilateral feet for operation of foot

19

controls; frequently perform postural activities including balancing, stooping, kneeling, crouching, crawling, and climbing stairs, ramps, ladders, and scaffolds; frequently tolerate exposure to moving mechanical parts, operating a motor vehicle, humidity and wetness, extreme cold and heat, vibrations, and dust, odors, fumes, and pulmonary irritants; and occasionally tolerate exposure to unprotected heights. (T. 386-91.) In affording significant weight to this opinion, the ALJ noted she gave maximum credit to Plaintiff's subjectively reported complaints and limitations, finding that she was able to walk for four hours total per workday, stand for three hours total per workday, and could do no work at unprotected heights or with ladders or scaffolds. (T. 25.) The ALJ therefore relied in large part on the opinion of rheumatologist Dr. Plotz. (T. 25.)

The ALJ noted the response to Dr. Plotz's opinion from Mr. Duffy (Plaintiff's attorney at the hearing) indicating that Dr. Plotz did not take into consideration Dr. Hickey's opinion and that, as a treating source, Dr. Hickey's opinion should have been given greater weight. (T. 25-26, 266-67.) The ALJ noted that she considered these arguments and that, although Dr. Hickey was Plaintiff's primary care provider, her treatment relationship was "of recent origin," while Dr. Plotz had the opportunity to review the entire record before reaching his conclusions. (T. 26.) The ALJ also noted that Dr. Hickey did not treat Plaintiff during the relevant period between her alleged onset date and date last insured and that there was no evidence to suggest that Dr. Hickey had access to treatment records from other physicians who did see Plaintiff during the relevant period. (*Id*.) The ALJ also noted that Dr. Hickey's opinion acknowledged that the limitations assessed and the onset of symptomology were "per patient" report and based, at least in part, on the subjective history provided by Plaintiff. (*Id*.) The ALJ indicated that Plaintiff's "longitudinal medical history, her complaints of pain, her failure to comply with treatment recommendations,

[and] [] references to apparent drug seeking behaviors…detract from the persuasiveness of Dr. Hickey's" opinion. (*Id*.)

Contrary to the ALJ's conclusion that Dr. Hickey did not treat Plaintiff prior to her date last insured (which the ALJ found to be September 30, 2013), the record indicates that Plaintiff was seen by Dr. Hickey and Christine Amore, LPN, on September 24, 2013, for a fibromyalgia flare. (T. 11, 26, 342-43.) However, because the ALJ clearly articulated multiple other reasons for discounting Dr. Hickey's opinion, the Court finds this misinterpretation of the record harmless. (T. 24-25.)

Dr. Hickey's opinion is not entitled to more weight because it appears to be based on Plaintiff's subjective complaints. While Dr. Hickey noted tender trigger points on physical examination to support the opined limitations, her opinion included several notations which indicated the opined limitations relied on Plaintiff's subjective reports ("carrying causes arm pain," "legs give out when standing," postural activities "would exacerbate pain," and "large muscle functions will exacerbate" as supported by "patient's subjective history"). T. 367-68. Additional treatment records also undermine the veracity of Plaintiff's reports to Dr. Hickey and, by association, the reliability of Dr. Hickey's opinion.

At an initial visit with Dr. Hickey in September 2013, Plaintiff was noted to be a new patient, assessed with fibromyalgia, and prescribed hydrocodone/Lortab. (T. 343.) Dr. Hickey explained that she would ideally not use chronic narcotics if there was an alternative, but Plaintiff reported feeling her pain was controlled and that she could function with a regimen of four-to-six Lortab tablets per day (using two at night). (T. 343-43.) Plaintiff had seen Erika Wachtmeister, D.O., on August 21, 2013, and reported she had stopped seeing her earlier physician (Dr. Sipperly) because of differences with him regarding fibromyalgia. (T. 328-30.)

In actuality, Dr. Sipperly noted on July 8, 2013, that Plaintiff needed to establish with a specialist in fibromyalgia and that he would only give her 30 days of Lortab. (T. 370.) At the visit in August 2013, Dr. Wachtmeister noted that she explained to Plaintiff that chronic opioid use is not indicated for fibromyalgia and referred her to pain management specialist Jason Steindler, D.O., because she was leery of any patient who was unable to tolerate any medications except opioids for chronic pain issues. (T. 329-30.) On September 23, 2013, Dr. Wachtmeister explained to Plaintiff that she did not do chronic opioid therapy for fibromyalgia and would see about referring her to a different pain management group that could see her sooner. (T. 333.)

On October 15, 2013, Plaintiff saw Dr. Sahoo for pain management evaluation on referral from Dr. Wachtmeister. (T. 326-27.) Dr. Sahoo noted Plaintiff's history of fibromyalgia as "questionable" and recommended proceeding in a conservative fashion including obtaining MRIs of Plaintiff's cervical and lumbar spine as well as a sleep consultation, physical therapy, and focusing on core strengthening. (T. 327.) Plaintiff was to follow up with Dr. Sahoo after consultation with a rheumatologist. (*Id.*) One day after seeing Dr. Sahoo, on October 16, 2013, Plaintiff reported to Dr. Steindler that the only thing that helped her pain was Lortab, but that her condition had been uncontrolled since the onset. (T. 338.) However, six months prior, in April 2013, Plaintiff had reported to a different physician that her all-over muscle pain had resolved with Cymbalta but she felt she was more anxious on Cymbalta and wanted to stop it. (T. 373-74.) Dr. Steindler noted that Plaintiff stated that she would occasionally use Lortab during her flares, which he initially found compelling until he saw that she had received a large number of pills from one of her physicians in September and had not had improvement in her pain. (T. 340.) He saw no reason to continue to offer her pain medications given the lack of improvement with them and Plaintiff was uninterested in other possible treatments including naltrexone or

increasing her aerobic activity. (T. 340.) At a follow-up visit with Dr. Hickey on February 10, 2014, Lortab was refilled and it was again noted that Plaintiff's pain was helped by use of Lortab (taken throughout the day with the use of two tablets to sleep). (T. 346-48.) Based on records from various providers, it appears that Plaintiff's reports to these providers (particularly regarding the frequency of her use of Lortab and its effectiveness) differed significantly enough to cast doubt on the opined limitations from Dr. Hickey as the ALJ concluded. The ALJ's analysis of the opinions from Drs. Hickey and Plotz as well as Plaintiff's credibility is therefore supported by substantial evidence.

The objective medical records also support the ALJ's adverse credibility finding. The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible during the relevant period. (T. 20.) When considering Plaintiff's subjective complaints of pain, the ALJ specifically noted that she must consider the factors described in 20 C.F.R. 404.1529(c), as well as SSR 96-7p, and that she followed the requirements for evaluating fibromyalgia set forth in SSR 12-2p. (T. 19-20, 26.) The ALJ noted that Plaintiff's treatment "records do not support a finding of disability but do establish poor treatment compliance, doctor shopping and drug seeking behaviors." (T. 26.) For those reasons, already addressed above in relation to the opinion evidence, the Court finds that the ALJ's credibility finding was based on a proper application of the required analysis and is supported by substantial evidence.

Finally, in weighing the opinion evidence regarding Plaintiff's physical impairments and limitations, the ALJ did not explicitly indicate what weight, if any, was afforded to the opinion of consultative examiner Dr. Puri. (T. 24-26, 305-09.) However, the Court finds this error harmless, because Dr. Puri did not opine specific objective limitations for Plaintiff, but rather

"recommended that she not carry out strenuous activities secondary to her above history."  (T. 308.)  Because the ALJ mentioned Dr. Puri's examination at Step Two when considering Plaintiff's asthma, it is clear she reviewed and considered this opinion.  (T. 13.)  Further, as the RFC determination includes physical and environmental limitations, the ALJ appropriately limited Plaintiff's RFC based on the other opinion and medical evidence of record.  (T. 18.) There is no suggestion that the ALJ would have been required to include greater limitations in the RFC had she chosen to afford great weight to Dr. Puri's opinion.

For the above reasons, the ALJ's findings regarding the opinion evidence as well as Plaintiff's RFC and credibility are supported by substantial evidence.  Remand is therefore not required on this basis.

### E.    Whether the ALJ's Step Four Finding Is Supported by Substantial Evidence

"[T]he Commissioner asks, at Step Four, 'whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform . . . her past work.'" *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013) (quoting *Shaw,* 221 F.3d at 132) (internal citations omitted).  "[T]he claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally." *Jasinski v. Barnhart,* 341 F.3d 182, 185 (2d Cir. 2003) (citing *Jock v. Harris*, 651 F.2d 133, 135 (2d Cir. 1981); SSR 82-62).

Plaintiff testified that her past work included working for a construction company in office management from 1988 to 2010; the ALJ identified this as a secretary position under code 201.362-030 in the DICTIONARY OF OCCUPATIONAL TITLES (sedentary, skilled with an SVP of 6). (T. 37, 39-45, 188.)  The ALJ correctly found this was past relevant work as Plaintiff performed it within the previous 15 years of her application at a substantial gainful activity level and did so long enough for her to learn how to do it.  (T. 26-27, 145-66.)  *See also* 20 C.F.R. §

404.1560(b)(1). The ALJ's Step Four finding that Plaintiff can perform her past relevant work as a secretary is supported by substantial evidence.  (T. 26, 37, 39, 188.)  Remand is therefore not required on this basis.

      **ACCORDINGLY**, it is

      **ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 19) is **<u>GRANTED</u>**; and it is further

      **ORDERED** that Defendant's decision denying Plaintiff disability benefits is **<u>AFFIRMED</u>**; and it is further

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **<u>DISMISSED</u>**.

Dated: February 13, 2018
      Syracuse, New York

                             Hon. Glenn T. Suddaby
                             Chief U.S. District Judge